1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

| | |
|---|---|
| NATHEN W. BARTON, | CASE NO. 3:24-cv-05194-DGE |
| Plaintiff, | |
| v. | ORDER GRANTING DEFAULT JUDGMENT (DKT. NO. 64) |
| REAL INNOVATION INC. et al., | |
| Defendant. | |

## I    INTRODUCTION

Before the Court is Plaintiff's Motion for Default Judgment (Dkt. No. 64) against Defendant Richardson Marketing Group, LLC ("RMG"). This motion arises on a somewhat unusual posture. Defendant Deryck D. Richardson, who is appearing *pro se*, accepted service on behalf of RMG and attempted to file an answer on behalf of RMG. This Court previously held that Richardson could not answer for RMG and gave RMG a deadline (nine months ago) to retain counsel and file an answer, which it did not do. Accordingly, this Court having already given RMG ample opportunity to defend itself, and RMG having chosen not to, the Court

GRANTS IN PART Plaintiff's motion for default and enters judgment in the amount required by statute.

## II    BACKGROUND

Plaintiff initiated this action in Clark County Superior Court, and it was removed to this Court. (*See* Dkt. No. 1.) Plaintiff brought suit against Defendants Real Innovation, Inc. ("RI") and its founder Peter Reierson, as well as RMG and its owner Deryck D Richardson, alleging that Defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and its implementing regulations. (Dkt. No. 1-1 at 6, 39.) Plaintiff also alleged state law claims. (*Id.* at 1-1 at 41–44.) Plaintiff alleges that RI is a "seller" as defined by 47 C.F.R. § 64.1200(f)(10), and RMG is a "telemarketer" under 47 C.F.R. § 64.1200(f)(12) making calls on behalf of the seller. (*Id.* at 2.) Plaintiff alleges that he has two residential telephone numbers that were subject to unwanted calls and that were registered on the Federal Trade Commission's *Do Not Call* registry more than 31 days before all the calls that are the subject of his complaint. (*Id.* at 6–7.) He lists 77 specific phone calls he claims were made to him in violation of TCPA, listing the calling number, date of the call, number that was called, whether the speaker was a live person or an automated system, and other details. (*See id.* at 16–18.) He then alleges that there were more than 200 additional calls, though those calls are not stated with specificity. (*See id.* at 18.) Plaintiff alleges that Defendants violated § 227(b) by making prerecorded or artificial voice calls and § 227(c) by making calls to numbers on the Do Not Call registry. (*Id.* at 39.)

Defendant RI responded to this lawsuit with an answer and a cross-claim against RMG. (Dkt. No. 12.) Defendant Richardson accepted service on behalf of RMG. (*See* Dkt. No. 31.) Because RMG did not file an answer to the complaint, Plaintiff moved to hold RMG in default. (Dkt. No. 34.) Defendant Richardson, appearing *pro se*, then filed an answer purportedly on

behalf of himself and RMG, denying the claims and crossclaims.  (Dkt. No. 41.)  This Court (Bryan, J.) held that Richardson could not answer on behalf of RMG, because Local Rule 83.2(b)(4) states that "[a] business entity, except a sole proprietorship, must be represented by counsel."  (Dkt. No. 45 at 3.)  But the Court deferred ruling on the motion for default, affording RMG an opportunity to retain counsel and answer the complaint by September 17, 2024.  (*Id.* 3–4.)  That deadline came and went without any action by RMG.  The Court then granted the motion and ordered the Clerk to enter default against RMG, and the Clerk did so on September 19, 2024.  (Dkt. Nos. 47, 48.)

Since that time, Plaintiff and RI have reached an agreement and entered a stipulated dismissal of Plaintiff's claims against RI; however, Plaintiff's claims and RI's cross-claims against RMG remain.  (*See* Dkt. Nos. 62, 63.)  Plaintiff has now moved for default judgment against RMG.  (Dkt. No. 64.)  RI also moved for and was granted an order of default against RMG.  (Dkt. Nos. 67, 69.)  Although Richardson continues to receive notices in this case (*see* Dkt. Nos. 37, 38) and is thus presumably aware of the motion for default judgment against his LLC, there has been no movement by RMG to set aside these defaults or otherwise participate in this litigation.

In his Motion for Default Judgment, Plaintiff has chosen to waive some of his claims "for simplicity."  (*See* Dkt. No. 64.)  The claims on which he is seeking judgment are: violations of 47 U.S.C. § 227(b) (Count 1); 47 U.S.C. § 227(c) (Count 2); Wash. Rev. Code § 80.36.390(2) (before July 23, 2023) and Wash. Rev. Code § 80.36.390(3) (on or after July 23, 2023) (Counts 7 and 8); Wash. Rev. Code § 80.36.390(6) (before July 23, 2023) and Wash. Rev. Code § 80.36.390(7) (on or after July 23, 2023) (Counts 8 and 10); Wash. Rev. Code § 80.36.390(9)

1   (on or after July 23, 2023) (Count 12); Wash. Rev. Code § 80.36.390(10) (on or after July 23,

2   2023) (Count 13); and Wash. Rev. Code § 80.36.400 (Count 14).  (Dkt. No. 64 at 3–5.)

3                              **III      JURISDICTION**

4           The Court has federal question jurisdiction over Plaintiff's TCPA claims.  *See* 28 U.S.C.

5   § 1331; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 376 (2012) (holding that TCPA's grant

6   of jurisdiction to state courts is concurrent with federal-question jurisdiction, not exclusive).  The

7   Court has supplemental jurisdiction over his state law claims.  28 U.S.C. § 1367.

8           Personal jurisdiction is a closer question.  A plaintiff bears the burden of showing that a

9   defendant "purposefully direct[ed] his activities or consummate[d] some transaction with the

10  forum or resident thereof; or perform[ed] some act by which he purposefully avails himself of

11  the privilege of conducting activities in the forum" and that the claim arises out of those forum-

12  based activities, the burden then shifts to the defendant to make a "compelling case" that

13  jurisdiction would be unreasonable.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797,

14  802 (9th Cir. 2004).  Unlike subject matter jurisdiction, personal jurisdiction is a waivable

15  individual right, so it is typically only considered on motion, but when considering a motion for

16  default judgment, the district court "has the duty to assure that it has the power to enter a valid

17  default judgment." *Sys. Pipe & Supply, Inc. v. M/V VIKTOR KURNATOVSKIY*, 242 F.3d 322,

18  324 (5th Cir. 2001).

19           Defendant RMG is incorporated in Ohio.  (Dkt. No. 40 at 7.)  Plaintiff alleges that the

20  Defendants are subject to jurisdiction in this Court because they directed phone calls to Plaintiff

21  in Washington, where he resides.  (Dkt. No. 40 at 5–7.)  Numerous courts have held that a

22  telemarketer who makes phone calls into the forum state is subject to specific personal

23  jurisdiction there as to TCPA claims arising from those calls, at least when the phone number is

24

1    registered in the forum state.  *See e.g., Ott v. Mortg. Invs. Corp. of Ohio*, 65 F. Supp. 3d 1046,

2    1057–1059 (D. Or. 2014); *Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 3421514, at *4

3    (N.D. Cal. July 14, 2014) ("When [Defendant] intentionally sent unsolicited text messages

4    advertising Sapphire to California cell phone numbers, which conduct gave rise to this litigation,

5    it purposefully directed its activity to California such that [Defendant] is reasonably subject to

6    the personal jurisdiction of this Court."); *Baker v. Caribbean Cruise Line, Inc.*, No. CV 13-8246-

7    PCT-PGR, 2014 WL 880634, at *2 (D. Ariz. Mar. 6, 2014) ("The Court finds that complaint in

8    this case is sufficient to establish specific jurisdiction, based on the allegation that Defendant

9    made calls to Plaintiff's Arizona number and the fact that those calls are the basis for Plaintiff's

10   claims."); *Rogers v. Nat'l Car Cure, LLC*, 636 F. Supp. 3d 762, 769 (S.D. Tex. 2022) ("Most

11   courts to address the question have held that calls to a cell phone can serve as minimum contacts

12   with the state containing the phone's area code when the calls are received there.")  Here,

13   however, Plaintiff pleads that he had two phone numbers Defendants called, one with a (972)

14   area code and the other with a (469) area code.  (Dkt. No. 40 at 5, 14–19.)  The Court takes

15   notice that both of these area codes are associated with the Dallas, Texas metropolitan area—not

16   Washington.[1]

17        Plaintiff does however plead that he put Defendants on notice of his Washington

18   residency by repeatedly informing them of his zip code.  He pleads that during the first call in his

19   complaint, on July 12, 2022, he was asked for a zip code and he gave 98607 (which is associated

20   with Camas, WA).[2]  (*See* Dkt. No. 40 at 15.)  He gave his zip code again and his home address

21

22   [1] *See e.g.*, https://areacodes.net/.  The Complaint does not state how Plaintiff obtained phone
     numbers with Texas area codes.

23   [2] *See* U.S. Postal Serv., Look Up a ZIP Code, https://tools.usps.com/zip-code-
24   lookup.htm?citybyzipcode.

when prompted during a call on August 2, 2022.  (*Id.* at 16.)  Other information in the complaint

indicates an awareness on the part of Defendants' agents of Plaintiff's Washington residency.

Plaintiff pleads that during a call on August 22, 2023, a telemarketer working for RMG

transferred his call to an agent working for Defendant RI.  (*Id.* at 24–26.)  During this process,

the RMG agent stated, "I have Mr. Nathen with me on the line and his zip code is 98607," and

then RI's agent "Damon" took over the call, stating "this is Damon and I am a senior licensed

life insurance agent for Washington…" (*Id.* at 25.)  This indicates that both Defendants RI and

RMG, through their agents, had an awareness they were transacting with a Washington

customer.

       The Court finds that this is sufficient to establish personal jurisdiction at the pleading

stage, especially with Defendant failing to contest jurisdiction.  An area code in the forum state

can serve as an indicator to a defendant that they are transacting business in the forum, but it is

an imperfect indicator because "increasingly, people keep their cell number as they move from

state to state, untethering the number's area code from its owner's state of residence."  *Cantu v.*

*Platinum Mktg. Grp., LLC*, No. 1:14-CV-71, 2015 WL 13912331, at *3 (S.D. Tex. July 13,

2015).  In cases where the plaintiff's phone number was not registered in the forum, courts have

asked whether there is any other information in the complaint sufficient to show that defendants

availed themselves of the forum.  *See Abedi v. New Age Med. Clinic PA*, No. 1:17-CV-1618

AWI SKO, 2018 WL 3155618, at *5 (E.D. Cal. June 25, 2018) (finding no personal jurisdiction

in California because there was no evidence that defendant knew the plaintiff had moved from

New Jersey to California and was using their non-California number in the forum); *Komaiko v.*

*Baker Techs., Inc.*, No. 19-CV-03795-DMR, 2020 WL 1915884, at *7 (N.D. Cal. Apr. 20, 2020)

(following *Abedi* reasoning).  Here, the Court finds Plaintiff has alleged just enough facts in the

complaint to show Defendant did have awareness that Plaintiff was in Washington, sufficient to find that Defendant directed its activities to and availed itself of the forum.

## IV    DISCUSSION

In the Ninth Circuit, entry of default judgment is governed by *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986).  *Eitel* requires the Court to consider the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–1472.  The Court thus considers those factors:

Factor 1: Possibility of Prejudice to the Plaintiff

Plaintiff will be prejudiced absent entry of default judgment.  "On a motion for default judgment, 'prejudice' exists where the plaintiff has no 'recourse for recovery' other than default judgment."  *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (quoting *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003)).  Here, Plaintiff initiated this action in March 2024, more than a year ago (*see* Dkt. No. 1), Defendant RMG was served in July 2024 (Dkt. No. 31), and still there has been no substantive movement on Plaintiff's litigation against RMG because of the latter's failure to participate. Absent default, Plaintiff will have no way to recover against RMG.

Factors 2 and 3: Merits of Plaintiff's Claims and Sufficiency of Complaint

The second and third factors are frequently analyzed together.  *Curtis*, 33 F. Supp. 3d at 1211.  The Court will analyze Plaintiff's claims on a claim-by-claim basis, determining whether he has made out a prima facie case as to each.

**Federal Claims**

1      1.  47 U.S.C. § 227(b)

2          Plaintiff has sufficiently alleged violations of § 227(b) as to those calls he alleges were

3   made with an artificial or pre-recorded voice.  Under § 227(b)(1)(A), it is unlawful "to make any

4   call (other than a call made for emergency purposes or made with the prior express consent of

5   the called party) using any automatic telephone dialing system [ATDS] or an artificial or

6   prerecorded voice," under certain conditions, such as when the call is made to a "cellular

7   telephone service."  Because it is framed in the disjunctive, "there are two ways to violate this

8   provision: using an ATDS or an 'artificial or prerecorded voice.'"  *Trim v. Reward Zone USA

9   LLC*, 76 F.4th 1157, 1160 (9th Cir. 2023).  At least as to a claim regarding use of an ATDS, the

10  elements of the claim are: "(1) the defendant called a cellular telephone number; (2) using an

11  automatic telephone dialing system; (3) without the recipient's prior express consent."  *Meyer v.

12  Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).  ATDS is defined in the

13  statute as "equipment that has the capacity—(A) to store or produce telephone numbers to be

14  called, using a random or sequential number generator; and (B) to dial such numbers."  47

15  U.S.C. § 227(a)(1).  Express consent means "[c]onsent that is clearly and unmistakably stated."

16  *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 955 (9th Cir. 2009) (quoting Black's Law

17  Dictionary 323 (8th ed.2004)).  Moreover, "providing a phone number in itself [does not mean]

18  that the consumer has expressly consented to contact for any purpose whatsoever."  *Chennette v.

19  Porch.com, Inc.*, 50 F.4th 1217, 1221 (9th Cir. 2022) (quoting *Van Patten v. Vertical Fitness

20  Grp., LLC*, 847 F.3d 1037, 10145-1046 (9th Cir. 2017)).

21          Plaintiff clearly alleges the first element, that RMG made calls to two cell phone numbers

22  registered in his name.  (*See generally*, Dkt. No. 40.)  Of the 77 calls Plaintiff alleges, he claims

23  that 54 of them were made using an artificial or pre-recorded voice, following one of several

24

1   scripts that he documented.  (*Id.* at 17–19)   He alleges that he did not consent to any of these

2   calls.  (*Id.* at 8.)  So as to the artificial or pre-recorded voice calls, Plaintiff has made out a prima

3   facie case.  There are an additional 23 calls Plaintiff alleges were made using a live voice.  (*Id.* at

4   17–19.)  Plaintiff does not allege that these calls were made using an "automatic telephone

5   dialing system;" that phrase does not appear in his complaint.  (*See generally*, Dkt. No. 40.)

6   Likewise, his Motion for Default Judgment appears only to invoke the 54 pre-recorded or

7   artificial voice calls as to his § 227(b) claim.  (*See* Dkt. No. 64 at 5–6.)  Therefore, the Court will

8   find that Plaintiff has sufficiently pled 54 violations of § 227(b), for the artificial or pre-recorded

9   voice calls.

10                                2.   47 U.S.C. § 227(c)

11          Subsection § 227(c) provides authority for regulations to create the Do Not Call Registry

12   ("DNCR"), and § 227(c)(5) creates a private right of action for "[a] person who has received

13   more than one telephone call within any 12-month period by or on behalf of the same entity in

14   violation of the regulations prescribed under this subsection[.]"  Plaintiff alleges that Defendant

15   violated those regulations, 47 C.F.R § 64.1200, by calling his numbers that had been registered

16   on the DNCR for more than 31 days.  (Dkt. No. 40 at 8, 40.)  Plaintiff does not identify what

17   subsection of the regulation he is invoking, but this claim appears to implicate 47 C.F.R

18   § 64.1200(c)(2), which prohibits calls to residential numbers on the DNCR, and allows a defense

19   that the caller relied on a previous version of the list, no more than 31 days old.[3]  Plaintiff's

20   claim appears to be facially valid and again, with Defendant failing to defend, there has been no

21   evidence placed in the record to cast doubt on Plaintiff's assertions.

22   _____

23   [3] Plaintiff's complaint also alleged violations of 47 C.F.R §§ 64.1200(a)(7), (b), (c)(1), and (d)(4)
     (*see* Dkt. No. 40 at 40–42), but these allegations are included within counts that Plaintiff chose

24   not to pursue in his Motion for Default Judgment, so the Court does not reach those allegations.

1    **State Claims**

2             1.   Wash. Rev. Code. §§ 80.36.390(2)/(3)

3         Under current § 80.36.390(3) or former § 80.36.390(2), "[a] person making a telephone

4    solicitation must identify him or herself and the company or organization on whose behalf the

5    solicitation is being made and the purpose of the call within the first 30 seconds of the telephone

6    call." The Court finds that Plaintiff has not adequately pled a violation of this section. Plaintiff

7    alleges that Defendants did not identify themselves within 30 seconds in any of the phone calls in

8    his complaint. (Dkt. No. 40 at 20.) However, the complaint is internally contradictory, because

9    it also alleges that each of the calling scripts the telemarketers used start in the form

10   "[Hello]/[Hi] this is [caller] with [business name]." (*See* Dkt. No. 40 at 10–14.) After that, each

11   of the scripts include a brief description of the nature of the business or call. (*See e.g., id.* at 10,

12   "I am with American Benefits and based on our records I show you may qualify for a state

13   regulated final expense insurance plan that's going to cover 100 percent of funeral, burial, and

14   cremation expenses.") It appears Plaintiff is alleging that Defendants violated the statute by not

15   identifying themselves specifically in the calls, as opposed to using the name(s) of their client(s),

16   e.g., none of the telemarketers identified themselves as working for Richardson Marketing

17   Group. But Plaintiff does not identify any legal requirement for them to do so. The statute says

18   "[a] person making a telephone solicitation must identify him or herself and the company or

19   organization *on whose behalf* the solicitation is being made and the purpose of the call within the

20   first 30 seconds of the telephone call." Wash. Rev. Code § 80.36.390(3) (emphasis added).

21   Therefore, as a matter of first impression, the Court sees no reason why it would be unlawful for

22   a marketer to state "I am [caller] with American Benefits" or "I am [caller] with Senior

23   Benefits"—presumably, these are clients of RI/RMG *on whose behalf* the calls are made—rather

24

1    than  identifying the call-center corporate owner.  For that reason, the Court finds Plaintiff's

2    claims under Washington Revised Code §§ 80.36.390(2)/(3) are insufficient and will not grant

3    judgment on those claims.

4                    2.   Wash. Rev. Code §§ 80.36.390(6)/(7)

5           Under current § 80.36.390(7)(a) or former § 80.36.390(6)(a),  "[i]f, at any time during the

6    telephone contact, the called party states or indicates that he or she does not want to be called

7    again by the telephone solicitor or wants to have his or her name, individual telephone number,

8    or other contact information removed from the telephone lists used by the telephone solicitor"

9    then the caller must "inform the called party that his or her contact information will be removed

10   from the telephone solicitor's telephone lists for at least one year."  Plaintiff alleges that for 25 of

11   the 77 calls, he requested during the call to be placed on the telemarketer's do not call list or to

12   be removed from their calling list, and he alleges that all 77 calls occurred within a year of one of

13   these do not call requests.  (Dkt. No. 40 at 17–19.)  Therefore, the §§ 80.36.390(6)/(7) claim is

14   sufficiently pled.

15                   3.   Wash. Rev. Code §§ 80.36.390(9)

16          Under this subsection, as of July 23, 2023, "[n]o person may initiate, or cause to be

17   initiated, a telephone solicitation to a telephone number registered on the do not call registry

18   maintained by the federal government pursuant to telephone consumer protection act, 47 U.S.C.

19   Sec. 227 and related regulations, as currently enacted or subsequently amended."  This claim

20   tracks Plaintiff's claim under § 227(c) and 47 C.F.R § 64.1200(c) for calling him despite his

21   number being listed on the Do Not Call Registry.  Therefore, for the same reasons described in

22   the Court's analysis of Plaintiff's § 227(c) claim, this claim is adequately pled, as to calls

23   occurring on or after July 23, 2023.

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### 4.  Wash. Rev. Code §§ 80.36.390(10)

Under this subsection, as of July 23, 2023, "[i]t is unlawful for a person to initiate, or cause to be initiated, a telephone solicitation that violates 47 U.S.C. Sec. 227(e)(1), as currently written or as subsequently amended or interpreted by the federal government."  Under § 227(e)(1), it is unlawful "to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value," with certain exceptions not relevant here.  Plaintiff's complaint does not identify any misleading or inaccurate identification information intended to defraud; it merely restates the statute.  (Dkt. No. 40 at 45.)  Therefore, the claim is not adequately alleged.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 5.  Wash. Rev. Code §§ 80.36.400

Under this section, "[n]o person may use an automatic dialing and announcing device for purposes of commercial solicitation."  Wash. Rev. Code. § 80.36.400(2).  The phrase "automatic dialing and announcing device" is defined as "a system which automatically dials telephone numbers and transmits a recorded or artificial voice message once a connection is made."  Wash. Rev. Code. § 80.36.400(1)(b).  Notably, this is a different definition than that used in the TCPA for ATDS, and omits any reference to a "random or sequential number generator."  *Compare* Wash. Rev. Code. § 80.36.400(1)(b) *with* 47 U.S.C. § 227(a)(1).  The phrase "commercial solicitation" means "the unsolicited initiation of a telephone communication made for the purpose of encouraging a person to purchase property, goods, or services, or wrongfully obtaining anything of value."  Wash. Rev. Code. § 80.36.400(1)(c).  Compliance with the federal TCPA and its implementing regulations is an affirmative defense under the state law, as is

1   "[i]mplement[ing] a reasonably effective plan to mitigate origination, initiation, or transmission

2   of a commercial solicitation."  Wash. Rev. Code. § 80.36.400(3).

3       Plaintiff alleges that "[t]he Defendants used an automatic dialing and announcing device

4   to initiate all the robocalls described above to Barton's phone numbers and then play artificial or

5   prerecorded voice if and when the call was answered," and alleges that he did not consent to any

6   call.  (Dkt. No. 40 at 45–46.)  The Court cannot know whether Defendant would have any

7   evidence to support an affirmative defense, because it is not defending.  The Court finds that

8   Plaintiff has adequately alleged violations of § 80.36.400(2) as to the 54 calls he alleges were

9   made with an artificial or pre-recorded voice.

10      Factor 4: The Sum of Money at Stake

11      The fourth *Eitel* factor "considers whether the amount of money requested is proportional

12  to the harm caused."  *Sun Life Assurance Co. of Canada v. Est. of Wheeler*, Case No. C19-0364-

13  JLR, 2020 WL 433352, at *4 (W.D. Wash. Jan. 28, 2020).  "If the sum of money at issue is

14  reasonably proportionate to the harm caused by the defendant's actions, then default judgment is

15  warranted."  *Walters v. Statewide Concrete Barrier, Inc.*, Case No. C-04-2559 JSW MEJ, 2006

16  WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006).  "The Court considers Plaintiff's declarations,

17  calculations, and other documentation of damages in determining if the amount at stake is

18  reasonable."  *Marshall Wealth Mgmt. Grp., Inc. v. Santillo*, Case No. 18-CV-03510-LHK, 2019

19  WL 79036, at *7 (N.D. Cal. Jan. 2, 2019) (quoting *Trung Giang Corp. v. Twinstar Tea Corp.*,

20  Case No. C 06–03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007)).

21      This is a unique situation where each of the statutes upon which Plaintiff relies prescribes

22  a mandatory minimum damages amount.  In doing so, Congress and the Washington Legislature,

23  respectively, made judgments about the harms of unwanted telemarketing calls to society and the

24

1    appropriate measure of damages for those calls.  The Court has no authority to deviate from

2    those judgments.  Therefore, the Court finds that the statutory damages are *per se* reasonable for

3    purposes of the *Eitel* test.  The Court will calculate the measure of damages in Section IV, *infra*.

4        Factors 5: The Possibility of a Dispute Concerning Material Facts

5        It is possible that there would be a dispute over material facts in this case, particularly

6    Plaintiff's consent to calls or lack thereof, if Defendant were participating.  Thus, this factor

7    weighs against default judgment.

8        Factor 6: Excusable Neglect

9        Defendant's failure to defend is not excusable.  Defendant Richardson is aware of the

10   litigation against RMG, accepted service on RMG's behalf, and attempted to answer the

11   complaint pro se for RMG.  *See* Section II, *supra*.  The Court previously gave RMG a deadline

12   to retain counsel and answer the complaint, which RMG failed to do—nine months ago.  If the

13   issue were lack of funds, Defendants could have so indicated, and the Court could have afforded

14   additional time to find counsel, but they have made no effort to explain their failure to defend.

15   Therefore, this factor weighs in favor of default judgment.

16       Factor 7: The Preference for Resolving Disputes on the Merits

17       The final *Eitel* factor recognizes "the strong policy underlying the Federal Rules of Civil

18   Procedure favoring decisions on the merits."  *Eitel*, 782 F.2d at 1472.  However, Defendant's

19   failure to participate in this case makes disposition on the merits not possible.  The seventh factor

20   weighs against default judgement, though this does not alter the result.  *See PepsiCo, Inc. v.*

21   *California Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002) ("the mere existence of

22   Fed.R.Civ.P. 55(b) indicates that 'this preference [for merits decisions], standing alone, is not

23   dispositive.'").

24

1    <u>Summary of *Eitel* Factors</u>

2         On balance, the *Eitel* factors favor Plaintiff, and the Court will enter default judgment

3    on those claims that are sufficiently pled.

4                                **V    DAMAGES**

5         Next, the Court must calculate Plaintiff's measure of damages.  At the outset, the Court

6    will only calculate damages for the 77 calls that Plaintiff pleads with specificity, not the "at least

7    200 more documented calls not specifically listed in this Complaint."  (Dkt. No. 40 at 19.)

8    Without any information about those calls beyond the conclusory statement that they existed, the

9    Court has insufficient basis to find that they violated the statute and award damages.  The Court

10   will first analyze damages for Plaintiff's TCPA claim, and then his state law claims.

11   <u>TCPA Claims</u>

12        As to damages under § 227(b), the statute provides as follows:

13        **(3) Private right of action**

14        A person or entity may, if otherwise permitted by the laws or rules of court of a State,
          bring in an appropriate court of that State—

15        **(A)** an action based on a violation of this subsection or the regulations prescribed under
16              this subsection to enjoin such violation,
          **(B)** an action to recover for actual monetary loss from such a violation, or to receive $500
17              in damages for each such violation, whichever is greater, or
          **(C)** both such actions.
18
19        If the court finds that the defendant willfully or knowingly violated this subsection or the
          regulations prescribed under this subsection, the court may, in its discretion, increase the
          amount of the award to an amount equal to not more than 3 times the amount available
20        under subparagraph (B) of this paragraph.

21   47 U.S.C. § 227(b)(3).  Further, there is a separate section in the statute covering damages for

22   violations of regulations promulgated under § 227(c):

23        **(5) Private right of action**

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

**(A)** an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

**(B)** an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or

**(C)** both such actions.

It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(d)(5).

The Court finds that Plaintiff can recover separately for violations of both § 227(b) and § 227(c) in the same call. The text and structure of the statute and available authority all point to that result. The text states that Plaintiff is entitled to $500 for "each such *violation*", and relying on that, at least one appellate court has held that "because the plain language of the TCPA 'allows a person to recover "$500 in damages for each ...violation of this subsection,"' a plaintiff can recover separate penalties under separate sections of the TCPA even if the violations occurred in the same telephone call." *Mey v. Phillips*, 71 F.4th 203, 225 (4th Cir. 2023). Further, the fact that each of § 227(b) and § 227(c) have their own damages provisions strongly indicate that they should be calculated separately.

Therefore, as to violations of § 227(b), the Court will award the statutory minimum $500 per violation but will not exercise its discretion to treble the damages. Without any development of the record in this case, the Court does not know whether there are any facts that would support

1    trebling the damages.  Taking Plaintiff's representations in the complaint as true, each of the 54

2    artificial or pre-recorded voice calls violated § 227(b), so the damages under this section amount

3    to $27,000.

4           As to violations of § 227(c), the Court will likewise award $500 per violation under

5    § 227(d)(5)(B).  Plaintiff has not demonstrated any actual damages, but the statute entitles him to

6    the *greater* of $500 or his actual damages.  The Court will not exercise its discretion to treble the

7    damages under this section either, as no evidence has been adduced to support a finding of a

8    willful or knowing violation.  To figure out how many violations of § 227(c) occurred that

9    Plaintiff can recover for, the Court asks how many calls Plaintiff received that were "more than

10   one telephone call within any 12-month period by or on behalf of the same entity."  47 U.S.C.

11   § 227(d)(5).  Plaintiff identifies two "monikers" used for Defendants' client(s): "American

12   Benefits" and "Senior Benefits," both selling final expense insurance using similar calling

13   scripts; they appear to be the same entity operating under different names.  (*See* Dkt. No. 40 at

14   14–15.)  Drawing an inference in Plaintiff's favor, the Court will assume that each subsequent

15   call was "on behalf of the same entity" as the initial call.  The first call occurred on July 12,

16   2022, and the calls continued periodically through August 22, 2023, with the largest gap between

17   them being about three months.  (Dkt. No. 40 at 18–19.)  Thus, all the calls occurred within 12

18   months of another call from the same entity.

19          There is also the question of whether Plaintiff can recover for the very first call.  The text

20   of the statute appears to exclude the first call, but at least one appellate court has specifically held

21   that the first call should be included, relying on the remedial purpose of the statue and holding

22   that "[t]he requirement of being a 'person who has received more than one telephone call' is

23   merely a threshold requirement that, once met, allows recovery for each call."  *Charvat v. GVN*

24

1    *Michigan, Inc.*, 561 F.3d 623, 630–631 (6th Cir. 2009).  Preferring to err on the side of furthering

2    the statute's remedial aim, the Court will include the first call in the recovery.  Therefore, the

3    Court counts 77 violations of § 227(c), for a total of $38,500 in statutory damages.

4        Between § 227(b) and § 227(c), Plaintiff is entitled to $65,500 in statutory damages for

5    his TCPA claims.

6        <u>State Law Claims</u>

7        For Plaintiff's state law claims, the Court bifurcates its analysis both by timeframe and

8    statute.  First, Plaintiff has claims under both Washington Revised Code § 80.36.390 (the

9    Washington Do Not Call Statute ("WDNC")) and § 80.36.400 (the Washington Automatic

10   Dialing and Announcing Device Act ("WADAD")).  The Ninth Circuit has held that damages

11   under each of these statutes needs to be calculated separately.  *Barton v. JMS Assoc. Mktg., LLC*,

12   No. 21-35836, 2023 WL 2009925, at *2 (9th Cir. Feb. 15, 2023).  And as with the TCPA, there

13   may be multiple violations per call.  The WDNC provides that "the court shall award damages . .

14   . *for each individual violation* of this section."  Wash Rev. Code § 80.36.390(13) (emphasis

15   added).  The WADAD provides for damages "per violation of this section."  Wash Rev. Code

16   § 80.36.400(4).

17       Second, both these statutes were amended effective July 23, 2023 increasing the

18   minimum damages, from $100 to $1,000 (WDNC) and from $500 to $1,000 (WADAD),

19   respectively. [4]  *See* WA LEGIS 103 (2023), 2023 Wash. Legis. Serv. Ch. 103 (S.H.B. 1051).

20   The Court will only apply those changes prospectively.  *See Barton v. J.M.S. Assoc. Mktg., LLC*,

21

22

23   ---
     [4] The statute refers to both "fines" and "damages;" as a private litigant, Plaintiff is entitled to the
24   latter.  *Barton*, 2023 WL 2009925, at *2.

No. 3:21-CV-05509-RJB, 2023 WL 5277682, at *3 (W.D. Wash. Aug. 16, 2023) (finding that increase in damages is prospective).

Next, the Court turns to a section-by-section analysis, starting with the WDNC. As discussed previously, the Court finds Plaintiff's claim under former § 80.36.390(2) / current § 80.36.390(3) for failure of the caller to identify themselves within 30 sections as insufficiently pled, so the Court will not calculate damages as to those sections. *See supra* at Section III. As to Plaintiff's claim under former § 80.36.390(6) / current § 80.36.390(7) for calling within one year of a do not call request, Plaintiff alleges that he requested not to be called during the first call on July 12, 2022, and again periodically until August 1, 2023 (*see* Dkt. No. 40 at 17–19.) Thus, all of the calls appear to violate this section, and the Court will include recovery for the first call, mirroring its analysis as to § 227(c). *See supra*. Plaintiff lists 69 calls occurring before July 23, 2023 (*see* Dkt. No. 40 at 17–19), so he is awarded $100 per call, for a total of $6,900. He lists an additional 8 calls occurring on or after July 23, 2023, so he is awarded $8,000 for those calls.

The Court further found that Plaintiff's claim under § 80.36.390(9) was adequately pled, but that section only took effect on July 23, 2023. As to the eight calls occurring on or after that date, he is awarded an additional $1,000 per call, or $8,000 total. As to Plaintiff's claim under § 80.36.390(10), the Court found that claim was inadequately pled, so there is no recovery.

Finally, as to Plaintiff's WADAD claim, the Court analyzed that Plaintiff adequately pled a claim under Wash. Rev. Code. § 80.36.400(2) as to each of the calls at issue. *See supra* at Section III. Therefore, the Court will award WADAD damages as to each of the calls. Plaintiff is awarded $500 per call for the 69 calls occurring before July 23, 2023, for a total of $34,500, and is awarded $1,000 for each of the 8 calls occurring on or after that date, for a total of $8,000.

<u>Summary of Damages</u>

Plaintiff's statutory damages are as follows:

| Statute | Award |
|---------|-------|
| 47 U.S.C. § 227(b) | $27,000 |
| 47 U.S.C. § 227(c) | $38,500 |
| Wash. Rev. Code § 80.36.390(6)/(7) | $14,900 |
| Wash. Rev. Code § 80.36.390(9) | $8,000 |
| Wash. Rev. Code § 80.36.400 | $42,500 |
| **GRAND TOTAL:** | **$130,900** |

## VI    CONCLUSION

The Court GRANTS default judgment to Plaintiff and enters JUDGMENT in the amount of $130,900 against Defendant Richardson Marketing Group, LLC.

Dated this 17th day of July, 2025.

David G. Estudillo
United States District Judge