UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NATHEN W. BARTON,<br><br>                 Plaintiff,<br>    v.<br><br>REAL INNOVATION INC. et al.,<br><br>                 Defendant. | CASE NO. 3:24-cv-05194-DGE<br><br>ORDER GRANTING DEFAULT JUDGMENT (DKT. NO. 77) |

Before the Court is Defendants Real Innovation, Inc.'s ("RI") and Peter Reierson's Motion for Default Judgment (Dkt. No. 77) against Defendant Richardson Marketing Group, LLC ("RMG"). This motion arises on a somewhat unusual posture. Defendant Deryck D. Richardson, who is appearing *pro se*, accepted service on behalf of RMG and attempted to file an answer on behalf of RMG. (Dkt. No. 41.) This Court previously held that Richardson could not answer for RMG and gave RMG a deadline to retain counsel and file an answer. (Dkt. No. 45.) RMG did not do so. Accordingly, this Court having already given RMG ample opportunity to

ORDER GRANTING DEFAULT JUDGMENT (DKT. NO. 77) - 1

1 defend itself, and RMG having chosen not to, the Court GRANTS Defendants' motion for
2 default and enters judgment.

3                     **I     BACKGROUND**

4     Plaintiff initiated this action in Clark County Superior Court, and RI removed the action
5 to this Court. (*See* Dkt. No. 1.) Plaintiff brought suit against RI and its founder Reierson
6 (collectively referred to as "RI"), as well as RMG and its owner Richardson, alleging that
7 Defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and its
8 implementing regulations. (Dkt. No. 1-1 at 6, 39.) RI responded to the lawsuit with an answer
9 and crossclaims against RMG. (Dkt. No. 12.) RI alleged that RMG was obligated to indemnify
10 RI for all damages arising from Plaintiff's claims, and RMG breached its contract with RI by
11 failing to comply with the TCPA. (*Id.* at 37-40.) Richardson accepted service on behalf of
12 RMG. (*See* Dkt. No. 31.) Because RMG did not file an answer to the complaint, Plaintiff
13 moved to hold RMG in default. (Dkt. No. 34.) Richardson, appearing *pro se*, then filed an
14 answer purportedly on behalf of himself and RMG, denying the claims and crossclaims. (Dkt.
15 No. 41.) This Court (Bryan, J.) held that Richardson could not answer on behalf of RMG,
16 because Local Rule 83.2(b)(4) states that "[a] business entity, except a sole proprietorship, must
17 be represented by counsel." (Dkt. No. 45 at 3.) The Court deferred ruling on Plaintiff's motion
18 for default, affording RMG an opportunity to retain counsel and answer the complaint by
19 September 17, 2024. (*Id.* at 4.) That deadline came and went without any action by RMG. The
20 Court then granted Plaintiff's motion and ordered the Clerk to enter default against RMG, and
21 the Clerk did so on September 19, 2024. (Dkt. Nos. 47, 48.)

22     Since that time, Plaintiff and RI have reached an agreement and entered a stipulated
23 dismissal of Plaintiff's claims against RI. (Dkt. Nos. 62, 63.) The Court granted Plaintiff's
24

motion for default judgment against RMG.  (Dkt. No. 70.)  RI moved for and was granted an order of default against RMG.  (Dkt. Nos. 67, 69.)  RI has now moved for default judgment against RMG.  (Dkt. No. 77.)  Although Richardson continues to receive notices in this case (*see* Dkt. Nos. 37, 38) and is thus presumably aware of the motion for default judgment against his LLC, there has been no movement by RMG to set aside these defaults or otherwise participate in this litigation.

## II    JURISDICTION

Jurisdiction over a crossclaim requires an independent basis for subject matter jurisdiction or it must fall under supplemental jurisdiction.  28 U.S.C. §§ 1331, 1332, 1367.  Where a federal court has original jurisdiction over a claim, the court may exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  In addition, "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if [, among other things,] the claim substantially predominates over the claim or claims over which the district court has original jurisdiction."  28 U.S.C. § 1367(c).  Federal Rule of Civil Procedure 13(g) particularly permits a crossclaim "if the claim arises out of the transaction or occurrence that is the subject matter of the original action [(i.e., there is supplemental jurisdiction)] . . . or if the claim relates to any property that is the subject matter of the original action."

The action which forms the basis of this case is a request to find Defendants liable for violations of the TCPA.  (Dkt. No. 1-1.)  In its crossclaim, RI specifically seeks a declaration that RMG was required to indemnify them against Plaintiff's claims and seeks to hold RMG liable for breach of contract for not complying with the TCPA.  (Dkt. No. 12 at 37-40.)  The Court

finds that the crossclaims relate to the original complaint and arise out of the same transaction or occurrence as the initial complaint. Therefore, the Court will exercise supplemental jurisdiction over the crossclaims.

### III   DISCUSSION

In the Ninth Circuit, entry of default judgment is governed by *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986). *Eitel* requires the Court to consider the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–1472. The Court thus considers those factors:

<u>Factor 1: Possibility of Prejudice to RI</u>

RI will be prejudiced absent entry of default judgment. "On a motion for default judgment, 'prejudice' exists where the [moving party] has no 'recourse for recovery' other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (quoting *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003)). Here, RI filed its crossclaim against RMG in May 2024, over a year ago (*see* Dkt. No. 12), RMG was served in July 2024 (Dkt. No. 31), and still there has been no substantive movement on RI's crossclaim against RMG because of the latter's failure to participate. Absent default, RI will have no way to recover against RMG.

<u>Factor 2 and 3: Merits of RI's Claims and Sufficiency of Crossclaim</u>

The second and third factors are frequently analyzed together. *Curtis*, 33 F. Supp. 3d at 1211. The Court will analyze RI's claims to determine whether it has made out a prima facie case for each.

1. Breach of Contract and Indemnity

"Generally, a plaintiff in a contract action must prove a valid contract between the parties, breach, and resulting damage." *Lehrer v. State, Dep't of Soc. & Health Servs.*, 5 P.3d 722, 727 (Wash. Ct. App. 2000).

RI entered into the record a copy of the Lead Provision Agreement executed between RMG and RI's chief marketing officer, Chuck Hoskovec. (Dkt. No. 12 at 42–45.) The agreement includes an indemnification clause, under which each party

> shall defend, indemnify, and hold harmless the other party and their respective directors, officers, and employees from and against any and all losses, claims, damages (compensatory and punitive), liabilities and expenses, including reasonable costs of investigation and legal counsel fees and disbursements, which may be imposed upon or incurred by the other party as the result of any breach by the other party of this Agreement.

(*Id.* at 43.) The agreement began on July 24, 2023, and continued "until either party [gave] written notice of its intent to terminate." (*Id.* at 43-44.) Exhibit A of the Lead Provision Agreement describes the subscription agreement between RMG and RI. (*Id.* at 45.) The "Notes" section of Exhibit A states, "All calls and leads provided by [RMG] are TCPA compliant. If any questions or dispute should arise, please contact [RMG] and all proof will be provided within 24 hours protecting all parties." (*Id.*) RI alleges that RMG breached the Lead Provision Agreement in the ways alleged in the Complaint in that RMG made calls to Plaintiff's cell phone number using an artificial or pre-recorded voice without Plaintiff's consent. (Dkt. No. 40 at 8, 17–19.) RI has established that it suffered damages, discussed in more detail below, as a result of RMG's breach. The Court concludes that RI's claim for breach of contract satisfies the second and third *Eitel* factors. As such, because RI makes out a prima facie case of breach of contract, it necessarily pleads sufficient facts to trigger the indemnification clause in the Lead Provision Agreement.

Factor 4: The Sum of Money at Stake

The fourth *Eitel* factor "considers whether the amount of money requested is proportional to the harm caused." *Sun Life Assurance Co. of Canada v. Est. of Wheeler*, Case No. C19-0364-JLR, 2020 WL 433352, at *4 (W.D. Wash. Jan. 28, 2020). "If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted." *Walters v. Statewide Concrete Barrier, Inc.*, Case No. C-04-2559 JSW MEJ, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006). "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *Marshall Wealth Mgmt. Grp., Inc. v. Santillo*, Case No. 18-CV-03510-LHK, 2019 WL 79036, at *7 (N.D. Cal. Jan. 2, 2019) (quoting *Trung Giang Corp. v. Twinstar Tea Corp.*, Case No. C 06–03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007)). RI seeks attorney fees and costs arising from RMG's breach of the Lead Provision Agreement, for a total of $49,754.93. (Dkt. No. 77 at 7.) The Court does not find this amount to be excessive as it is based upon RMG's obligations under the terms of the agreement.

Factor 5: The Possibility of a Dispute Concerning Material Facts

It is possible that there would be a dispute over material facts in this case, particularly whether RMG violated the TCPA so as to breach the Lead Provision Agreement. Thus, this factor weighs against default judgment.

Factor 6: Excusable Neglect

RMG's failure to defend is not excusable. Richardson is aware of the litigation against RMG, accepted service on RMG's behalf, and attempted to answer the complaint *pro se* for RMG. *See* Section I, *supra*. The Court previously gave RMG a deadline to retain counsel and answer the complaint, which RMG failed to do—11 months ago. If the issue were lack of funds,

1 Richardson could have so indicated, and the Court could have afforded additional time to find
2 counsel, but they made no effort to explain their failure to defend.  Therefore, this factor weighs
3 in favor of default judgment.

<u>Factor 7: The Preference of Resolving Disputes on the Merits</u>

The final *Eitel* factor recognizes "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1472.  However, RMG's failure to participate in this case makes disposition on the merits not possible.  The seventh factor weighs against default judgement, though this does not alter the result.  *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002) ("the mere existence of Fed. R. Civ. P. 55(b) indicates that 'this preference [for merits decisions], standing alone, is not dispositive.'").

<u>Summary of *Eitel* Factors</u>

On balance, the *Eitel* factors favor RI, and the Court will enter default judgment on those claims.

## IV   DAMAGES

Next, the Court must calculate RI's measure of damages.  When granting default judgment, the Court must ensure that the amount of damages claimed is reasonable and supported by the evidence.  *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); *see also* LCR 55(b)(2).  Here, the terms of the Lead Provision Agreement provide that RI shall be entitled to reasonable attorney fees and costs incurred as a result of breaching the contract.  (Dkt. No. 12 at 43–44.)  The lodestar method is "the default principle for fee calculation in Washington." *See Brand v. Dep't of Labor & Indus.*, 989 P.2d 1111, 1119 (Wash. 1999) (Talmadge, J., concurring).  Washington law presumes a properly calculated lodestar figure represents reasonable compensation for counsel. *Henningsen v. Worldcom, Inc.*, 9 P.3d

948, 959 (Wash. Ct. App. 2000). The lodestar method multiplies "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *McGrath v. Cnty. of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995). RI asserts that its calculation of $49,754.93 in attorney fees and costs represents a reasonable figure. (*See* Dkt. No. 77 at 7.) The Court's ability to independently assess the reasonableness of the fee request is significantly impeded by RMG's failure to participate in this litigation and resulting failure to subject RI's calculations to adversarial scrutiny. Thus, the Court relies on the evidence available to it: the declaration of RI's attorney, Jensen Mauseth. Based on that evidence, the Court finds that the rate and hours charged are reasonable.

### A. Attorney Fees

#### i. Reasonableness of Hourly Rates

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 866, 895 n.11 (1984).

In determining hourly rates, the Court must look to the "prevailing market rates in the relevant community." *Bell v. Clackamas Cnty.*, 341 F.3d 858, 868 (9th Cir. 2003). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The court may also rely on its own knowledge and experience in determining what rates are reasonable. *See Salyer v. Hotels.com GP, LLC*,

Case No. C13-1966-RSL, 2015 WL 3893079, at *2 (W.D. Wash. June 23, 2015) (citing *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).

Here, Mauseth stated in his declaration that he is an attorney with 12 years of experience and focuses on general litigation, corporate formation, and real estate matters. (Dkt. No.78 at 2.) Before entering private practice in 2013, Mauseth clerked for Judge Ricardo Martinez of the United States District Court for the Western District of Washington. (*Id.*) Mauseth's rate is $325 per hour. (*Id.*) Mauseth's paralegal, Judy Kostov, also worked on the case. (*Id.*) Kostov has worked as a paralegal for over 13 years and her rate since 2023 was $180 an hour. (*Id.*)

The Court finds that the rates charged by Mauseth and Kostov are reasonable relative to the prevailing market rate. These rates were agreed to by the client, and in the Court's experience, rates of $325 and $180 per hour respectively are reasonable for attorneys and paralegals of that level of experience in the Seattle/Tacoma market.

### ii. Reasonableness of Hours Worked

When submitting a motion for attorney fees, a prevailing party may not submit records containing entries for hours that are "excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Here, RI's legal team spent 150.4 hours of attorney time and .7 hours of paralegal time working on this matter. (Dkt. No. 77 at 6.) In reviewing the billing records submitted by Mauseth, the Court calculated 147.9 hours of attorney time, instead of the 150.4 hours claimed. The Court will award RI only for what Mauseth's records show. Therefore, the Court awards RI 147.9 hours of attorney time and .7 hours of paralegal time, for a total of $48,193.5 in fees.

### B. COSTS

RI seeks $748.93 in reasonable expense costs. (Dkt. No. 77 at 7.) Those costs include: $181.95 for copies of deposition transcript, $508.84 in process service fees, $49.14 in messenger delivery services, and $9.00 PACER fee for documents in other cases filed by Plaintiff. (*Id.*) Washington Revised Code § 4.84.010 lists the types of costs that are recoverable for a prevailing party, and specifically includes filing fees and process serving fees. Wash. Rev. Code § 4.84.010(1)–(2). And, the contract between RI and RMG made the latter liable for "attorneys' fees and costs." (Dkt. No. 12 at 44.) For those reasons, the Court awards RI its litigation costs.

### C. CONCLUSION

Accordingly, it is hereby ORDERED that:

1. RI's motion for default judgment (Dkt. No. 77) is GRANTED.
2. The Clerk of Court is directed to enter judgment against RMG and in favor of RI in the amount of $48,942.43 for attorney fees and costs.

Dated this 30th day of September, 2025.

David G. Estudillo
United States District Judge